UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NADIA PADMORE,

                Plaintiff,

    – *against* –

REMARKABLE FOODS
HOSPITALITY, LLC,

                Defendant.

**<u>OPINION & ORDER</u>**

25 Civ. 7250 (ER)

<u>RAMOS</u>, D.J.:

Nadia Padmore brought suit against her former employer, Remarkable Foods Hospitality, LLC ("Remarkable Foods"), pursuant to the Fair Labor Standards Act ("FLSA"), New York Labor Law, New York State Human Rights Law, and New York City Human Rights Law.  Doc. 1.  Padmore alleged that Remarkable Foods failed to pay her overtime wages and reimburse her for work-related expenses, and then fired her in retaliation for complaints that she made regarding its discriminatory practices.  *Id.*  Before the Court is the parties' motion for approval of their settlement agreement.  Doc. 26.  For the reasons set forth below, the motion for settlement approval is DENIED.

## I.    LEGAL STANDARD

In this Circuit, parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor ("DOL").  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  The parties therefore must satisfy the Court that their agreement is "fair and reasonable."  *Beckert v. Ronirubinov*, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015).  In determining whether the proposed settlement is fair and reasonable, "a court should consider the totality of circumstances, including, but not limited to, the following factors:  (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in

establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Id.* (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

Courts may reject a proposed FLSA settlement if the parties do not provide the basis for the recovery figure, if they fail to include documentation supporting the reasonableness of the attorneys' fees, or if the settlement agreement includes impermissible provisions such as restrictive confidentiality clauses or overbroad releases. *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176–82 (S.D.N.Y. 2015), *cited with approval in*, *Cheeks*, 796 F.3d at 205–06.

## II.   DISCUSSION

### A.  Range of Recovery

The proposed settlement agreement provides a total recovery of $50,000. Doc. 26 at 2. Pursuant to the agreement, Padmore's counsel will receive approximately one third of the total settlement amount, $16,987, in attorneys' fees and costs. *Id.* After attorneys' fees and costs, Padmore will receive $33,013. *Id.*

Padmore's estimated maximum recovery is approximately $103,163. *Id.* Specifically, she estimates that she is entitled to $24,242 in compensatory damages for unpaid overtime and reimbursement wages; the same in liquidated damages[1]; $44,679 in lost wages due to her wrongful termination; and $10,000 in penalties for wage statement and notice violations. *Id.*

Here, Padmore's net settlement represents approximately 32% of her estimated maximum recovery. Against this backdrop, the Court finds that the proposed settlement

---

[1] Although Padmore's counsel does not specifically estimate the amount of liquidated damages to which she could be entitled, the Court understands that she is seeking such damages only for her overtime and reimbursement claims.

amount is fair and reasonable. *See Khan v. Young Adult Institute, Inc.,* No. 18 Civ. 2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of reasonable FLSA settlements ranging from 25% to 40% of the plaintiff's maximum recovery). There is value to Padmore's receipt of a settlement without experiencing the risks and delays inherent in litigation. Doc. 26 at 3. In addition, Padmore's counsel notes that there were contested disputes regarding numerous issues in this case, including the number of hours that Padmore worked, the length of Padmore's employment, the applicability of certain exemptions, and whether the wage statements that Remarkable Foods provided were technically compliant with statutory requirements. *Id.* at 2–3.

"Furthermore, the adversarial nature of a litigated FLSA case is typically an adequate indicator of the fairness of the settlement, and '[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.'" *Palma Flores v. M* Culinary *Concepts, Inc.,* No. 19 Civ. 1229 (ER), 2019 WL 6683827, at *2 (S.D.N.Y. Dec. 6, 2019). Considering the above-mentioned uncertainties and the risk of litigation, the settlement resolves bona fide disputes and reflects a reasonable compromise that fairly compensates Padmore. *See Garcia v. Good for Life by 81, Inc.*, No. 17 Civ. 7228 (BCM), 2018 WL 3559171, at *2 (S.D.N.Y. July 12, 2018) (concluding that settlement amount was a "reasonable compromise of disputed issues"). And the settlement resulted from arm's length negotiations in which the parties were represented by attorneys who were experienced in wage and hour litigation. Doc. 26 at 3.

### B. Attorneys' Fees & Costs

The Court also finds that the proposed attorneys' fees and costs are reasonable. Padmore's counsel will receive $16,987 in attorneys' fees and costs, which is approximately one third of the settlement. *Id.* at 3. This is a reasonable percentage, as "courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17 Civ. 3302 (AJN), 2019

WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019).  Nonetheless, "courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees."  *Id.* "The lodestar amount is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'"  *Id.* (quoting *Gaia House Mezz LLC v. State St. Bank & Trust Company*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014)).

Padmore's counsel submitted billing records that indicate that he worked 22.84 hours on this case at a rate of $500 per hour.  Doc. 26-3.  In support of his billing rate, Padmore's counsel cites to several courts in this Circuit that have concluded that this rate is reasonable given his experience.  Doc. 26 at 3–4; *see, e.g.*, *Gumaneh v. Vilano Employment Services, Inc.*, No. 22 Civ 774 (LTS) (KHP), 2023 WL 5715613 (S.D.N.Y. Sept. 5, 2023); *Myers v. Life Alert Emergency Response, Inc.*, No. 23 Civ. 03609 (ER), 2024 WL 422057 (S.D.N.Y. Jan. 5, 2024).  The Court finds that this rate is reasonable. *See Shaw v. ProCore, LLC*, No. 21 Civ. 3883 (AT), 2023 WL 5048236, at *3 (S.D.N.Y. July 3, 2023) (approving $500 hourly rate for the same attorney and noting that "[o]ther courts have found similar rates to be reasonable"); *see also, e.g.*, *Rodriguez v. 3551 Realty Co.*, No. 17 Civ. 6553 (WHP), 2017 WL 5054728, at *3 (S.D.N.Y. Nov. 2, 2017) (stating that although an hourly rate of $450 for partners is "somewhat higher than the presumptively reasonable rates in this District [in 2017], [it is] not beyond the pale").

Plaintiffs' counsel seeks a total of $16,987 in attorneys' fees and costs, $16,506 of which represent attorneys' fees.  Doc. 26 at 4.  The lodestar of $11,420, compared to the requested $16,506 of the settlement (net of costs), results in a lodestar multiplier (net of costs) of approximately 1.45.  *See id.*; Doc. 26-3.  Courts in this District have made clear that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."  *Fujiwara v. Sushi Yasuda Limited.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014).  Accordingly, the Court finds that the $16,987 in attorneys' fees and costs is reasonable under the circumstances.

4

### C. Other Provisions

However, the Court finds that there is a provision of the settlement agreement that is not fair and reasonable. Specifically, the agreement includes an objectionable release. *See* Doc. 26-1 at 2; *see also Doe v. Solera Capital LLC*, No. 18 Civ. 1769 (ER), 2021 WL 568806, at *1 (S.D.N.Y. Jan. 20, 2021) (explaining that "factors that preclude approval include the presence of an overly broad release that waives claims beyond those related to wage-and-hour issues").

In particular, the release inappropriately discharges claims outside of those at issue in this suit, by discharging "any and all claims and potential claims that may legally be waived by private agreement, whether known or unknown, which [Padmore] ha[s] asserted or could assert against the Company arising out of or relating in any way to any acts, circumstances, facts, transactions, or omissions, occurring up to an dincluding the date [she] sign[s] th[e] [a]greement." Doc. 26-1 at 2. In general, courts reject such broad releases. *See, e.g.*, *Alexander v. DRG Hospitality Group, Inc.*, No. 23 Civ. 11101 (ER), 2024 WL 4789401, at *3–4 (S.D.N.Y. Nov. 14, 2024); *cf. Gonzalez v. Chestnut Holdings of New York, Inc.*, No. 25 Civ. 00753 (ER), 2025 WL 3287023, at *3 (S.D.N.Y. Oct. 2, 2025) (permitting a narrowly tailored mutual release provision). The parties have a right to enter into a settlement that waives only claims relating to the existing suit. *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) ("[T]he [c]ourt will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute. A release as broad as that in the proposed [a]greement 'confers an uncompensated, unevaluated, and unfair benefit on the employer' and is 'inequitable and unfair.'").

In resisting this conclusion, Padmore's counsel highlights that some courts have held that "broad, general releases may be permissible in non-class FLSA cases if, among other things, the plaintiffs no longer work for the defendants and the releases are mutual." *Garcia v. Good for Life by 81, Inc.*, No. 17 Civ. 07228 (BCM), 2018 WL 3559171, at *4

5

(S.D.N.Y. July 12, 2018). *But see Plizga v. Little Poland Restaurant Inc.*, No. 15 Civ. 08820 (LAK) (BCM), 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (noting that courts in this Circuit are split regarding mutual general releases and many "have refused to approve any FLSA settlement unless the release given by the plaintiff is 'limited to the claims at issue in this action'"). This Court, however, has not adopted that approach. *See Ochoa v. Prince Deli Grocery Corp.*, No. 18 Civ. 9417 (ER), 2021 WL 5054323, at *2 (S.D.N.Y. Nov. 2, 2021) ("The terms of the mutual release are also reasonable, as they are limited to the claims in the Complaint and are not otherwise unduly restrictive."); *see also Gonzalez*, 2025 WL 3287023, at *3; *Alexander*, 2024 WL 4789401, at *3–4. And, even if it did, the Court notes that the mutual release here would still be inappropriate because the releases are "not mutual in terms of their breadth and extent." *Souffrant v. 14-15 Mertens Place Corp.*, No. 19 Civ. 5482 (BCM), 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (adhering to its previous holding that broad mutual releases may be permissible in FLSA cases, but rejecting a particular release for this reason). Indeed, while Remarkable Foods releases only Padmore, Padmore releases Remarkable Foods, "its parents, subsidiaries, affiliates, and related entities and all of their respective agents, attorneys, employees, officers, directors, shareholders, members, managers, employee benefit plans and fiduciaries, insurers, successors, and assigns." Doc. 26-1 at 2. In other words, the release "extend[s] to numerous persons and entities only tenuously connected to this action, and purport to release them not only from claims arising out of that connection but also from wholly unrelated claims." *Souffrant*, 2020 WL 1166231, at *2.

Accordingly, the Court finds that the proposed release provision is not fair and reasonable.

**III.    CONCLUSION**

For the foregoing reasons, the parties' request for approval of the Agreement is DENIED without prejudice.  The parties are therefore instructed to do one of the following by April 17, 2026:

1. File a revised letter and signed agreement releasing Remarkable Foods of liability only from claims arising out of this action;

2. File a joint letter that indicates the parties' intention to abandon settlement; or

3. Stipulate to dismissal of the case without prejudice, which the Court need not approve under current Second Circuit case law.  *See Cheeks*, 796 F.3d at 201 n.2.

It is SO ORDERED.

Dated:    April 3, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

7